

FILED
MARCH 21, 2008
KAREN S. MITCHELL
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| BOBBY CHAPA, | § | |
| Plaintiff, | § | |
| v. | § | 2:05-CV-0253 |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | § | |
| Defendant.[1] | § | |

**REPORT AND RECOMMENDATION
TO REVERSE THE COMMISSIONER'S DECISION
AND REMAND FOR FURTHER ADMINISTRATIVE ACTION**

Plaintiff BOBBY CHAPA, brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner of Social Security (Commissioner), denying plaintiff's application for a term of disability, and disability benefits. Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED and the case REMANDED for proceedings consistent with this opinion.

I.
THE RECORD

Plaintiff applied for supplemental security income (SSI) benefits under Title XVI of the

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue should be substituted as the defendant in this suit.

Social Security Act on September 9, 2002, with a protective filing date of August 29, 2002. (Transcript [hereinafter Tr.] 44-45).[2] Plaintiff alleges his disability onset date to be June 28, 1986, (*Id*.), the same date as his date of birth. Plaintiff claimed impairments which included foot and heart problems as well as a learning disability. (Tr. 50). The ALJ found plaintiff's impairments to include a congenital foot defect, scoliosis and a leg length discrepancy, a history of heart surgery, and years of special education services with a diagnosis of learning disabled. (Tr. 16).[3] It was determined at the administrative level that plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 20, Finding No. 2). The record shows plaintiff was in the tenth grade when he applied for benefits (Tr. 56) but that by the time of the ALJ hearing he was no longer attending school. (Tr. 245). He testified the only "regular" class he attended was "P.E." [physical education] and his other classes were "special education classes." (Tr. 245-46). Plaintiff testified he had not obtained a high school degree or its equivalent. (Tr. 246). Plaintiff testified he attempted to work part-time at Fiesta Foods as a stocker/checker, at Pizza Hut in food preparation, and at Braum's Ice Cream store but was forced to leave all jobs due to pain in his foot and back. (Tr. 251-53).

Plaintiff filed a Request for a Hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on November 16, 2004. (Tr. 238-55). On May 18, 2005, ALJ Larry Johnson rendered an unfavorable decision, finding plaintiff not entitled to benefits at any time relevant to the decision. (Tr. 15-25). The ALJ determined plaintiff retained, "the residual functional

---

[2] Plaintiff notes in his brief he has filed for benefits twice before, he was granted benefits from 1995-1998 on his first application and was denied benefits on his second application. (Plaintiff's Brief at 2, FN 1 citing Tr. 15).

[3] As stated above, plaintiff born June 28, 1986 and he turned 18 during the pendency of his case. The ALJ analyzed plaintiff's case under both the child's SSI benefit scheme pursuant to 20 C.F.R. § 416.924 and the adult scheme pursuant to 20 C.F.R. § 416.920. However, plaintiff stated in his brief he is only challenging the ALJ's findings with respect to his claim for benefits as an adult. (Plaintiff's Brief at 3).

capacity to perform substantially all of the full range of sedentary work," (Tr. 24), but also found plaintiff to be limited to the, "performance of unskilled 'sedentary' work." (*Id.*, Finding No. 5). On August 5, 2005, the Appeals Council denied plaintiff's request for review of the decision of the ALJ (Tr.4-7), rendering the ALJ's decision the final decision of the defendant Commissioner. Plaintiff now seeks judicial review.

II.
STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164.

Stated differently, the level of review is not *de novo*. The fact that the ALJ could have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

III.
ISSUES

The ALJ made the determination that plaintiff is not disabled at Step Five of the five-step sequential analysis. Therefore, this Court is limited to reviewing only whether there was substantial evidence in the record as a whole supporting a finding that plaintiff retained the ability to perform other work that exists in significant numbers in the national economy (plaintiff has no past relevant work), and whether the proper legal standards were applied in reaching this decision. Plaintiff presents the following issues:

1.  Whether the ALJ's residual functional capacity (RFC) finding is contrary to the evidence and the law;

2.  Whether the ALJ erred at Step 5 when he applied the Grids and failed to call a vocational expert; and

3.  Whether the ALJ's finding that plaintiff had a "limited" education as opposed to a "marginal" education was contrary to the evidence of record.

IV.
MERITS

A.
Issues 1 and 2

The first two issues will be addressed together. Plaintiff first argues defendant's RFC finding did not include consideration of plaintiff's nonexertional impairments, specifically

4

plaintiff's low I.Q. and his impairment in the domain of concentration, persistence and pace. (Plaintiff's Brief at 6). Plaintiff further argues that because he suffers from a nonexertional impairment, reliance on the Grids was error.

The ALJ first found plaintiff was capable of performing sedentary work, stating as follows:

> Mr. Chapa has the same combination of impairments which were evaluated under the childhood disability standards; a congenital foot defect; scoliosis and a leg length discrepancy; a history of heart surgery, and he continues to receive special education services under a diagnosis of learning disabled. I.Q. testing has placed him in the mildly borderline range of intellectual functioning. (Tr. 22).
>
> . . . .
>
> The evidence as a whole, including Mr. Chapa's self-reported activities of daily living, supports that work of this nature [sedentary] would fall well within his residual functional capacity. He retains the ability to sit for long periods; lift light weights; ambulate occasionally; and effectively use his upper extremities. I therefore find that Mr. Chapa retains a physical residual functional capacity compatible with the performance of 'sedentary' work. (Tr. 22-23).

After making this RFC determination and finding plaintiff could perform sedentary work, the ALJ proceeded to Step 5 of the sequential analysis (plaintiff had no past relevant work). At this step the ALJ considered plaintiff's nonexertional impairments, *i.e.*, low I.Q. and a moderate impairment in the domain of concentration, persistence and pace. The ALJ determined these nonexertional impairments limited plaintiff to unskilled sedentary jobs. Plaintiff directly challenges this finding that plaintiff's nonexertional mental impairments and their effect on plaintiff's ability to perform sedentary work resulted in a special vocational restriction to unskilled occupation. The ALJ specific finding at issue is as follows:

> Mr. Chapa has indicated that his problems working stemmed from orthopedic problems, primarily involving his standing tolerances, rather than from mental

> factors. When his mental status is evaluated under section 12.05 of the regulations I find no more than "mild" limitations in Mr. Chapa's activities of daily living or social functioning. He engages in a wide range of normal activities independently, appropriately, and effectively, and has no problems interacting appropriately with others. At this juncture in his academic progress Mr. Chapa's learning disability likely compromises his ability to assimilate complex concepts and to perform detailed tasks. However, Mr. Chapa's school records, in conjunction with his activities of daily living, fully support the ability to perform routine types of activities; particularly the one or two step work processes inherent in many unskilled occupations. I therefore find "moderate" limitations in concentration, persistence and pace, with specific vocational restriction to unskilled occupations. Mr. Chapa's condition has not imposed any episodes of decompensation. Accordingly, I find that Mr. Chapa is relegated to the performance of work activities that are routine and repetitive in nature. While this limitation compromises his ability to perform detailed or complex tasks on a sustained basis, the mental demands of unskilled types of work fall well within his capacity. Consideration of the evidence as a whole results in a finding that Mr. Chapa has a residual functional capacity compatible with the performance of unskilled types of "sedentary" work.

(Tr. 23). The evidence of record includes reports from plaintiff's school teachers, including one Ms. Jessica Scott. In a School Activity Report, Ms. Scott characterized plaintiff's academic functioning to be at the 6th to 7th grade level (he was in the 10th grade at the time). (Tr. 108). When asked to describe plaintiff's activities during an average day in school she responded, "Same as others." (*Id.*). She described plaintiff as, "very polite, cooperative and well behaved," (*Id.*) and she found him to be "superior" at following oral instructions and in his comprehension of classroom discussion as compared to other unimpaired students plaintiff's age. (Tr. 109). The teacher opined that compared to other unimpaired students plaintiff's age plaintiff was "above average" in his ability to remember information just heard, express himself adequately when

called upon, adapt to new situations without getting upset, and respond appropriately to praise and correction. (*Id.*). The teacher found plaintiff "average" when compared to unimpaired persons his own age in his ability to initiate activities independently, to retain instruction from

week to week, to exhibit organization in accomplishing tasks, and in completing tasks on time. (*Id.*). An evaluation by the Special Education Department of the Amarillo Independent School District in May of 2003 determined plaintiff's anticipated graduation plan to include successful completion of his individualized educational program including, "demonstrated mastery of specific employability skills and self-help skills which do not require direct ongoing educational support from the local school district." (Tr. 176). As articulated by defendant, the same report found plaintiff to be performing in the English/language arts at a 5th grade level, in Math at a 6th to 7th grade level, in Science at a 9th grade level, and in Social Studies at a 6th grade level. (Tr. 182).

In his 2005 consultative examination report Dr. Gradel stated plaintiff was, "congenial with the examiner and he was cooperative with the procedural condition. He was able to sustain sedentary individual attention to [a] task for 2 hours without taking a break." (Tr. 210). The doctor determined plaintiff's functioning to be, "within the mildly below normal borderline intellectual range when compared with others of his age." (Tr. 212). Based upon his evaluation and findings as a whole, Dr. Gradel determined that in the context of work-related mental activities plaintiff has no restrictions in his ability to understand, remember and carry out short, simple instructions, and had slight restrictions in his ability to understand, remember and carry out detailed instructions and in his ability to make judgments on simple work-related decisions. (Tr. 214). The doctor further determined plaintiff had no restrictions in his ability to interact appropriately with the public, a supervisor or co-workers, had slight restrictions in his ability to respond appropriately to work pressures in a usual work setting, and moderate restrictions in his

ability to respond appropriately to changes in a routine work setting. (Tr. 215).[4]

The evidence of record, as set forth above and as otherwise found in the administrative transcript, from plaintiff himself, from his teachers and from the consultative examination support the ALJ's finding that plaintiff is capable to some degree of sedentary work. The finding at issue, however, is the second determination that plaintiff had "moderate" limitations in concentration, persistence and pace and was relegated to the performance of unskilled work activities which are routine and repetitive in nature. (Tr. 23). After making this determination and concluding plaintiff was capable of sedentary work activities limited to unskilled jobs, the ALJ applied the Grids to find plaintiff was not disabled.

In *Allsbury v. Barnhart*, 460 F.Supp.2d 717, 721 (E.D.Tex. 2006), the court held, "The grids establish whether there are available jobs in the national economy for claimants with exertional impairments. They do not establish jobs that exist in the national economy at various functional levels for claimants with solely nonexertional impairments." (emphasis and footnotes omitted). Further, when an ALJ determines a nonexertional impairment precludes performance of past relevant work, the ALJ is required to produce "expert vocational testimony or other similar evidence" to meet his burden at Step 5 of other jobs existing in the national economy that claimant can perform. *Allsbury*, 460 F.Supp.2d at 721-22, citing *Lawler v. Heckler*, 761 F.2d 195, 198 (5th Cir. 1985). Two exceptions exist. First, when an ALJ determines a claimant's nonexertional impairment does not significantly effect his RFC and second, even if the nonexertional impairment significantly effects RFC, the ALJ may still utilize the grids as a

---

[4]This recitation is not intended to summarize all evidence in the record. Other evidence relevant to the appeal is in the record.

"framework for considering 'how much the individual's work capability is further diminished....by the nonexertional limitations.'" *Allsbury*, 460 F.Supp.2d at 722, citing 20 C.F.R. pt. 404, subpt. P, app.2, § 200.00(e)(2)(2005). The ALJ in this case did not specify that he was using the "framework" exception to find plaintiff not disabled. Nor did he specifically find plaintiff's nonexertional impairment did not significantly affect plaintiff's RFC. As the court in *Allsbury* commented, the Fifth Circuit has not, "weighed in specifically on whether, when, or how the framework concept is acceptable as an exclusive basis for decision making." *Allsbury* at 724. *Allsbury* also cites to other courts in this Circuit who have found, "if the Plaintiff suffers from nonexertional or a combination of exertional and nonexertional impairment, the Secretary may not utilize the Medical Vocational Guidelines [grids] for a decision...When the Guidelines may not be utilized for decision making, then the Secretary may only sustain her burden of proof by producing expert vocational testimony..." Id. at 725, citing *Bolton v. Callahan*, 984 F.Supp. 510, 514 (N.D.Tex Sept. 19, 1997); *Frazier v. Chater*, 903 F.Supp. 1030, 1034-35 (N.D.Tex. September 13, 1995). In *Rodriguez v. Barnhart*, 2006 WL 377977 *2 (W.D.Tex.) it was determined that when a plaintiff suffers from a combination of exertional and nonexertional impairments, the ALJ may rely on the grids if a finding of disabled is directed. However, the Court further found, "if the applicable rule directs a finding that plaintiff is not disabled, then, only, must the Commissioner consider nonexertional limitations and utilize the testimony of a vocational expert." *Id*. Once the ALJ determines plaintiff to be capable of performing sedentary work, and the grids direct a finding of not disabled, he should then take expert vocational testimony to ascertain the effect of plaintiff's nonexertional impairments on that ability.

The defendant's position appears to be that the medical-vocational guidelines establish there are sufficient numbers of unskilled jobs available to the claimant to satisfy the defendant's burden at Step 5 because the Grids are limited only to the existence of unskilled jobs. Consequently, defendant argues the ALJ's determination that plaintiff was not disabled should stand since the jobs identified by the Grid are limited to unskilled jobs. (Defendant's brief pp 8-9). Defendant's citation to *Fraga v. Bowen*, 810 F.2d 1296, 1303-1304 (5th Cir. 1987), however, does not support that argument and defendant has cited no other authority in support of such a contention. A situation similar to this case was addressed by the Eighth Circuit in *Sanders v. Sullivan*, 983 F.2d 822, 823-24 (8th Cir. 1992). There, an ALJ determined that certain nonexertional impairments, including work-related stress, would be minimized in an unskilled entry level job that did not require complex or detailed work activity and as a result, use of the Grids established plaintiff was not disabled. The court held that in such a situation it was error not to produce expert vocational testimony regarding any erosion of the job base. In *Lucy v. Chater*, 113 F.3d 905, 908-09 (8th Cir. 1997), the court held borderline intellectual functioning was a significant nonexertional impairment that must be considered by a vocational expert, and rejected the defendant's argument that a vocational expert was not necessary because an individual with borderline intellectual functioning would be able to follow simple directions and, therefore, would not be prevented from engaging in the full range of sedentary work since the Social Security's list was limited to unskilled sedentary jobs. The court further held that while borderline intellectual functioning may not rise to the level of a disability, a claimant is entitled to have a vocational expert consider the condition along with other impairments to determine how it impacts his residual functional capacity.

Here, the ALJ did not find the nonexertional impairments had no impact, nor did he find that they had an insignificant impact. As plaintiff argues, the ALJ ventured into the realm of vocational expert testimony. The Court agrees and finds this constituted reversible error. The ALJ made a determination that plaintiff's nonexertional mental impairments, in particular, his borderline intellectual abilities and his moderate impairment in the area of concentration, persistent and pace, limited the plaintiff to one to two step tasks. The ALJ further found this nonexertional impairment limited plaintiff to unskilled jobs. In making this determination, the ALJ, in effect, became a vocational expert. Whether plaintiff's moderate impairment in the area of concentration, persistent and pace limited plaintiff to one and two step jobs and whether such eroded the occupational base and to what degree it was eroded was a determination for a vocational expert. While the ALJ may be correct that jobs calling for simple and/or one to two step instructions may be unskilled sedentary jobs, such jobs also require an individual to perform repetitive tasks over an eight-hour work day. Plaintiff's nonexertional impairment of moderate limitation in the area of <u>concentration</u>, <u>persistence</u> and <u>pace</u>, could directly affect plaintiff's ability to remain attentive and concentrate. This could directly affect plaintiff's ability to perform simple sedentary work, such as assembly line work, unskilled in nature, which the ALJ found plaintiff capable of performing. It may be that a vocational expert can identify unskilled sedentary jobs which would not be affected by plaintiff's nonexertional limitations. It may also be that a vocational expert would find limitations in the area of concentration, persistence and pace, would affect such jobs and further erode the number of unskilled sedentary jobs available. Reversal and remand is required so a vocational expert can be called and can address the issue.

## A.
## Issue 3

In his third issue, plaintiff argues the ALJ's finding that plaintiff had a "limited" education as opposed to a "marginal" education was contrary to the evidence of record. Defendant disagrees saying the ALJ determined plaintiff's education to be limited or less. Defendant further argues such issue is irrelevant because it does not change the outcome of the ALJ's decision. While it is unnecessary to reach this issue because of the determination that use of the Grids was reversible, it should be noted that the distinction between limited education and marginal education may be irrelevant if application of the medical-vocational guidelines had been proper. The difference between limited education and marginal education, however, may be significant if a vocational expert is called.

The undersigned has recommended this case be remanded as set forth above. If this case is remanded, plaintiff will have an opportunity to develop his contention regarding his educational level.

## V.
## RECOMMENDATION

THEREFORE, for all of the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the defendant Commissioner finding plaintiff not disabled and not entitled to a period of disability benefits be REVERSED and the case be REMANDED for further administrative findings at Step 5, including the taking of testimony from a Vocational Expert consistent with this Report and Recommendation.

# VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 21st day of March 2008.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).